Shanice Scarlett from Hoggins Berman, appearing for Plaintiff. May it please the Court. The question in this case is whether owners of Pulte homes, who have lost 50 percent of the value of their homes, over double that of the general real estate decline in California, have standing to pursue their claims. This is not the usual case of a home, a traditional home on a residential street. This is a case where class members purchased homes from Pulte in tract communities where Pulte built these homes, planned these homes, built these homes, and sold these homes in tract developments. They advertised these homes as stable, owner-occupied communities. And they financed over 90 percent of these homes through their mortgage subsidiary. That's nine out of ten homes financed through Pulte. And these mortgage loans were toxic. They were interest-only, adjustable-rate mortgages to ill-qualified buyers. After building these Potemkin villages, Pulte walked away. Inevitably, these neighborhoods experienced foreclosures far in excess of the rates experienced generally in California. The named plaintiff, Ms. Sotalin Kaing, lost her life savings. And what is before this Court today is whether or not these plaintiffs have standing to bring their claims. Injury in fact, standing, Article III standing has three familiar requirements. Injury in fact, traceability, and redressability. The first two were the only two of concern to the district court and contested by the defendant. For decades, courts have held that diminished value in property is sufficient to provide injury in fact standing. And there is no argument here that the plaintiff's home is worth less than other similarly situated homes. It is averred in the complaint. Counsel, when we have a series of steps in between, I think we have some real problems about causation, do we not here? And I think that that would go to the second prong of standing, which would be fairly traceable. So let me address that. The district court seemed to be concerned that the loss of value in plaintiff's home could be attributed to the independent actions of the neighborhood and other generalized factors, such as unemployment. But by crediting these other possible explanations, the district court jumped to the merits of this case and did not accept the pleadings at the pleading stage. Essentially, what it held was that plaintiff could not demonstrate that at least some of the loss in the value of her property was due to the defendant's actions. But this is what damages models and expert testimony is for, to isolate variables such as unemployment or other declines in the market and isolate those out and then attribute the remainder of the decline in value to the defendant's actions. Don't forget, these homes lost double the decline in the general real estate in California. It was not simply something that moved with the general market. And as recognized very recently by Judge Beide in the Barnum decision in February 2011, at the pleading stage, the plaintiff need not eliminate every other contributing cause to establish standing. It is sufficient to allege that defendant's actions impacted the value of the property, and plaintiffs have alleged that here. This confirms similarly what Judge Posner said recently in BCS Services, a case at summary judgment, not even the pleading stage, where he said a plaintiff does not have to prove a series of negatives. He doesn't have to offer evidence which positively excludes every other possible cause of the accident. The burden is on the defendant to present evidence to support the conjectured superseding causes. Another point that goes to this, the intervening acts of neighbors, that seems to be something that concerned Judge Conte, but the fairly traceable prong does not require that the defendant directly cause the plaintiff's injury or even that the defendant's conduct be the last link in the chain of causation. That was confirmed recently by Judge Beide in Barnum and also by the U.S. Supreme Court in Bennett v. Speer. Pulte's actions had a determinative effect on any third party which purchased the toxic loans and then foreclosed on Pulte houses. It had a 92 percent capture rate on the mortgages in these subdivisions. It had risky lending practices. Over 65 percent of the mortgages issued by the end of 2005 were interest-only adjustable rate mortgages. And the inevitability of these foreclosures were foreshadowed by comments made by William Pulte in 2005, where he said in most cases buyers have no idea how they're going to pay back the risky loans offered by Pulte. It isn't a key issue. First is the standard for dealing with standing, that is to say Article III standing, as opposed to the standards for dealing with the 12b6 challenge to the complaint. And you're arguing that that standard is not as rigorous as the standard under 12b6. Isn't that part of the framing of this? That's correct, Your Honor. But that being said, we are at the pleading stage, and all facts avert in the complaint must be taken into true. There was no factual challenge by the defendant to the standing of the plaintiff. So what we know from the complaint is that Ms. Kang's home declined at a rate greater than the value of the general housing market. The district courts hypothesizing that the decline was caused by unemployment or the general market simply failed to accept the facts alleged in the complaint as true. In addition, doesn't your complaint convey the notion here is that the defendants This is not the market in general. This is the market with respect to one community or one set of communities as to which the defendants had very substantial control. In other words, whatever the vagaries of the market was, the housing market across the country, you're really talking about a finite location, a finite locations where the defendants had substantial control in their marketing, in the financing, et cetera. That's exactly right. There almost as pockets of homes throughout the State that the defendants exercised enormous control over, exercised control over who the houses were sold to and how the mortgages were given and what these mortgages were. And so by essentially saying this is a wash because there was a decline, there was a bubble, we all know that the housing market crashed, the district court failed to credit the allegations of complaint and essentially held that plaintiffs would never be able to prove that this greater decline that we see in the Pulte The district court also erred, we believe, by requiring that Ms. Kang sell her property at a loss to have injury in fact standing. That has never been required by the Supreme Court or the multitude of circuit court cases we've cited to you. And again, most recently in Barnum, Judge Bidey held that a reduction in the value of property was sufficient to demonstrate injury in fact. And this is because there's something different about a home. This is where people live. This is where they raise their children. This is where they have their friends. Courts have never required a plaintiff to sell their home to have access to the courthouse doors. And the district court erred in distinguishing this long line of cases by saying each of these cases had a physical change in the environment associated with the plaintiff's allegations. This is simply wrong. In Friends of the Earth, an environmental pollution case, at the time of the district court's opinion, the defendant had complied with all permits for at least two years. At the time of the Supreme Court opinion, the facility was closed, up for sale, all discharges permanently ceased. In Gladstone in 1979, in Havens Realty in 1982, the Supreme Court held that diminution in value due to racial steering was sufficient to confer standing. This is a far cry from the physical change in the environment required by the district court here. I'd like to reserve some time. Thank you. May it please the Court. William Donovan on behalf of the Pulte defendants. Four federal judges sitting on both coasts have issued thoughtful opinions demonstrating why, in these cases, these unprecedented cases, the plaintiffs cannot establish injury or causation.  I think the Kang case is the worst case for the plaintiffs of the four, for a very simple reason. The crux of Appellant's argument is that somehow she was misled by Pulte in that people who they call unqualified were able to buy in the Pulte community. But, in fact, in paragraph 78, which is page 355 of the record, and elsewhere in the complaint, they fully acknowledged that Ms. Kang herself was unqualified, which put her on notice as to the conduct that is being challenged. There is simply no constitutionally protected or statutory protected right for Ms. Kang to be the only buyer in her neighborhood who is, quote, unquote, unqualified. And in counsel's able remarks to this panel, she never identified exactly what it was that Pulte was supposed to have done. And despite the multiple opportunities that the district court in here in both cases are going to hear from today, the plaintiffs have never met that initial showing of what the conduct is that supposedly created the injury that's the first prong of the Lujan test. They can't. They don't allege a statute's been violated. They don't mention that regulations have been violated. This is a heavily regulated industry in which both the federal government and the state of California tell the homebuilders what they're supposed to disclose. There is simply no requirement that the homebuilders not only reveal the intimate personal and financial details about neighbors to a prospective buyer, let alone that they make predictions in the future about what might happen to those neighbors. But if the area is marketed as stable and family-owned and marketed, I think it's in the other case where it's marketed to investors. Is that in this case as well? I believe that's the Maya case you'll hear in a few minutes. Okay. But so that was the representation. Marketed as stable and family-owned. And the question then is whether or not what they actually did was consistent or inconsistent with that representation. Judge Gertner, we submit that there's no way Ms. Kang could have been misled by that generic statement because they say she was unqualified. So whether the statement is true or not true, whether the statement was made or not panel because they admit that their plaintiff was unqualified. So she knew the kinds of people who were buying into this neighborhood. It's a very tough case for them as Judge Conte recognized below. And I'd also like to return to Judge Fletcher's comment a moment ago about steps and causation. Counsel, what representations as to value were made by your client? Ms. Kang received an appraisal before deciding to purchase a home for $518,000. Yes, I'm asking exactly what your client represented to her. So we know there was an appraisal, but I'm asking specifically about what representations were made by your client in respect to value? The only representations alleged in the complaint were a generic statement about stability and then also there was an allegation made in the complaint that the initial discussions about the purchase price started at $575,000 and ultimately the negotiations ended up with a purchase price materially lower. So there was a substantial reduction that Ms. Kang was able to obtain off the initial asking price that Pulte made to her. That's the extent of the representation made. It is undisputed and it's indisputable in light of the allegation in her own complaint that before committing to go forward, prior to the closing, Ms. Kang received an appraisal which was for a fair price of the property and essentially the same as what she paid. And I need to point out to this Court that you need not take Judge Conte's word for it or the other district court judges' word for it or our word for it. If you look at the bottom of page 5 and the top of page 6 of the Maya reply brief, these are the Maya plaintiffs you're going to hear from shortly. Yes, we'll hear from them. But they say clear as day in their reply brief that of course Ms. Kang could not have been misled about the character of the neighborhood or that somehow it was concealed from her that unqualified buyers were purchasing into this neighborhood because she was one of them. And on the issue of price, Judge Fletcher, that you just raised, that they also admit what we believe is obvious based upon their own pleading in the complaint that Ms. Kang did not pay a price that exceeded the fair market value as reflected in the appraisal. I also need to point out that there is, in our view, a very serious privacy issue here. I pointed out a few minutes ago that they still have not cited anything that Pulte was supposed to have said under the law, is required to say under the law in this very highly regulated area. Her argument is different. Her argument, I don't think is that you, I don't think she's arguing you didn't comply with the disclosure requirements. What she's saying is that you used language in addition to the disclosure requirements that induced her to buy. It's a, I mean, it's, as I read that portion of the complaint, it's just a straightforward claim of misrepresentation on what was actually said. But you can't, you can't have a misrepresentation if you know what the truth is. If you, if you know you're on. That goes, that doesn't go to standing. That goes, that goes to whether or not you're entitled to judgment. Well, it goes to whether or not there is an injury or an alleged injury that's fairly traceable to the conduct of these defendants. Well, it's a different claim, you're right, than in the other case. This is a claim, paragraph 21 of the complaint, that there were precious sales tactics falsely claiming that prices of new property releases would be higher, et cetera, et cetera, and then pressuring an otherwise unqualified buyer to buy into that by making glossy representations that the company clearly was not going to follow through on. The issue, as Judge Thomas is suggesting, is whether that confers standing. Merits are an entirely different issue. Standing is the forefront of the issues, both with respect to injury and with respect to causation. And maybe I should move to causation before I run out of time. But even if this Court were to find that somehow there is an injury, and for the many reasons that we've outlined we don't think there is, there are, as Judge Fletcher realized and pointed out a few minutes ago, there are innumerable steps in the causal chain here which make this case sheer speculation. Whether they say the decline was 3 percent more than average or double more than average, it is clear that the claim that's being made is inextricably tied to general market conditions in the economy. And in the San Diego County case, Judge Fletcher, that you were on, the panel correctly ruled that in that case, where there were really three, only three other potential alternate causes, that the Lujan test wasn't satisfied. And that test, minimally, is whether there's independent action of some third party not before the Court. In this case, there are independent actions of dozens of parties that are third parties in this case. You've got every credit union, every bank, every mortgage company, Wall Street buying up these loans. You've got all the appraisers who are appraising the property. You've got decisions of individual homeowners, both in the Pulte neighborhood and generally, as to whether to walk away from their house to continue paying the mortgage. I mean, the question is whether or not that is so far out, the causation argument is so far out, as to eliminate standing, not whether they would ultimately win. And the problem is that the argument you're making doesn't necessarily identify Pulte's control over a finite space by the – it was controlling what the houses would look like, what the marketing would be, what the mortgage would be, and while there may have been numbers of things that affected that market, they were a substantial determiner of what that market was going to be like. Pulte has a very, very small percentage of the overall market, whether you look at a community, a town, a zip code, and certainly the national economy that we're looking at. Pulte cannot control the market to say, and this is not an antitrust case, where somehow, in a Pulte neighborhood, you could charge some multiple as to what the fair market value of property was generally in the state of California. And so, it is inextricably tied to the market. It is inextricably tied to the conduct of multiple third parties who are not before the court. Except that in this case, what she's saying is that you gave me – you offered me a discount, you should have known better, and you made specific representations to me that caused me damage. And that's different from the generic case that's being made about – in other instances, about marketing to a general group of people. Judge Thomas, I would respectfully disagree. The alleged marketing techniques didn't say there was a nonexistent leak that turned out to be there, or there was asbestos that was open and potentially going to cause harm. The alleged misrepresentation, which she could not have relied upon because she knew she was herself unqualified, related to the condition of the neighborhood according to plaintiff, and there are numerous actors affecting that condition of the neighborhood. So it's not just a Pulte representation in the abstract, or Pulte knows of a fact in the house that they're trying to mislead Ms. Kang about. It is fundamentally different. If this Court adopts the standard, which we believe to be a standard for – that is unprecedented for standing, that that means that somehow a home builder could be held liable for independent decisions of all these other actors, including I didn't get to the Federal Government and all of the policies that were out there encouraging home ownership, that somehow the home builder could be responsible for all those actions. What if the issue was simply creating the conditions that increased the risk that a change in the market would be devastating? In other words, what about that issue? Very good question, Judge Gertner, but I think it's got a very simple answer. Pulte didn't have the power to affect that. With all the banks, the credit unions, Wall Street who's buying up these loans, they can't act in a vacuum. The economy and general economic – I understand your point, but where is that – I mean, we just take what we have in the complaint before us. What Judge Conte did, and I don't think unreasonably in some respects, was to say I'm looking at the general world and it seems complicated and therefore there can't be recovery from this. But we're at the pleading stage of this. And obviously an expert can go through and say, no, I'm discounting all those factors and we find sufficient causation for X damage. I mean, that's the issue in the case. You can't just say the world's complicated and therefore there's no liability. In this case, there was no request made at the district court to submit any declaration by any expert who would try to disentangle the very complicated web of causation issues in this case. There was no motion to amend the complaint? They asked for leave to amend, but something should be clear. Rule 15, they had the automatic right to amend. And in this case, they not only had the Tingley and Green decisions adverse to them, but they knew or certainly could have known that Judge Phillips in Riverside had already expressed a lot of reservations about the Maya case. So in our view, they had the absolute right to amend. They could have done it when they saw our motion. They made the strategic decision not to do it, and so they can't be fairly heard to complain to this Court that somehow they lost that right. But apart from the Rule 15 moment, they did move to amend. And Judge Conte concluded that it would have been based upon their specific allegations in this case, that it would have been futile because they had basically boxed themselves into the complaint. So to be clear, I'm not saying in this case that there is no way that claim could be pled. I don't have to go that far. I'm saying with respect to the claim actually pled in the Maya case, excuse me, in the Kang case, that they can't do it. You can't say you lied to me about the condition of my neighborhood. You told me this was going to be stable. You told me it was going to be family driven. You told me these people are going to have lots of money in the bank and be suitable buyers, when in fact Ms. Kang knew she wasn't. Paragraph 78 in the complaint, it's said throughout. With respect to the appraisal, they also boxed themselves in because they say clear as day that the appraised price was above. I don't see it. 78 says sales with unqualified buyers such as plaintiff. I see. Okay. Our questions have taken you over your time. Any further questions from the panel? No. Okay. Thank you, counsel. Thank you very much. Rebuttal? You've got a minute 40. Thank you, Your Honors. There's been much discussion today about whether or not Ms. Kang was a qualified or unqualified buyer. To be clear, Ms. Kang put down a 20 percent deposit on this house, her life savings, over $100,000. She has lost that money given the value of her house. All right. So what did you mean in paragraph 78? That might have been just poor drafting, because to be clear, she was a qualified buyer. The issue was whether or not she understood the terms of her loan, which were adjustable rate. If she did not, as Judge Conte noted, there was no explanation of the terms to her. No lender was present to answer her questions. English is her second language. After her loan closed, she immediately tried to seek modification because of the onerous terms of the mortgage. Ms. Kang was also deceived as to the stability of her neighborhood, as the Court has noted. But most importantly, the fact of her deception is not relevant to standing here. Even, indeed, under Plaintiff's UCL claim, deception would not be an element under the unfair prong of the UCL. And so while this may be a discussion for a later date before the trial court, after Ms. Kang is deposed and all the facts are known, it's certainly not something that's relevant to the Court today. Article III standing is not meant to be a substantial or insurmountable hurdle. Then Judge Alito noted, injury in fact is not Mount Everest. It suffices to allege some specific identifiable trifle, and that is what plaintiffs have done here. If you're granted leave to amend, what would you change about your complaint? Your Honor, we certainly could add more details about the decline in the housing market generally versus the decline in the Pulte homes. Unfortunately, Ms. Kang also has lost her home. To the extent that the Court was concerned that she hadn't sold her home to have injury in fact standing, she now has lost her home. We could also add in any details regarding the – there was a 9b challenge under Vest. We could certainly add details regarding the misrepresentations made. All right. Thank you, counsel. I'd like to ask one question. The contention is made that any amendment would be contradictory to what has been already pled. Now, is that accurate? That's absolutely not accurate, Your Honor. What is in the complaint is that the Pulte homes decreased at twice the value of the general housing market. If there is concern regarding causation and traceability, we could certainly add additional allegations that more concretely lay out this decline that happened in Pulte neighborhoods that we didn't see elsewhere, and have some – I would not think that submitting a declaration in support of a complaint is necessary, but we And it would not be contrary to what is currently stated in the complaint? No, Your Honor. Well, if you plead that she's qualified and you pled that she wasn't – she was unqualified, why wouldn't that be a contradiction? We don't think that the case necessarily turns on qualified versus ill-qualified. I think what the case focuses on is Pulte's actions in issuing toxic mortgages such as he has. No, I understand your theory, but, I mean, you've heard the defense today, and they she was unqualified, and so she shouldn't complain that everybody else is unqualified. And you stood up and said she was qualified. And so my question to you is if you elect to amend – if you're granted leave to amend and you amended paragraph 78 to say she was qualified, why isn't that a contradiction? It could certainly be raised against the plaintiff in her deposition. It could be addressed at summary judgment. Defendants could move for summary judgment on that issue. But, again, I don't think it would dispose of all of plaintiff's causes of action. It certainly wouldn't dispose of a U.C.A. case. The question was why wouldn't it be a contradiction, not what the other possible defenses might be. Your Honor, plaintiffs are allowed to plead contradictory theories even in complaints under the Federal Rules of Civil Procedure. Yeah. Well, we're talking about different – you're talking about contradictory theories. We're talking about contradictory facts that may or may not be dispositive. But qualified buyer is not a fact. It's simply a label that's been attached during this litigation. In fact, it's nothing more than an opinion. The Maya plaintiff's opinion is that 20 percent is the borderline for a qualified versus unqualified buyer. And under that label, plaintiff would be qualified. Right. Well, we'll leave that at that. Thank you for your arguments. We will take a 15-minute break before the last case. Thank you. And, Gwen, would you let us know when everybody's ready? All right.
judges: Gertner, Fletcher B. , Thomas